# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# FORT MYERS DIVISION

S.Y.,

    Plaintiff,

v.

WYNDHAM HOTELS & RESORTS, INC.; HANUMAN OF NAPLES LLC; SHREE SIDDHIVINAYAK HOSPITALITY, LLC; H. I. NAPLES, LLC and HOLIDAY HOSPITALITY FRANCHISING, LLC,

    Defendants.

Case No.: 2:20-cv-00626-JES-MRM

## WYNDHAM HOTELS & RESORTS, INC.'S RESPONSE TO PLAINTIFF'S MOTION TO PROCEED ANONYMOUSLY AND FOR ENTRY OF A PROTECTIVE ORDER

Defendant Wyndham Hotels & Resorts, Inc. ("WHRI"), by its undersigned counsel, hereby responds to Plaintiff's Motion to Proceed Anonymously and for Entry of a Protective Order (Dkt. 61) as follows:

### I.   INTRODUCTION

WHRI has not opposed Plaintiff's request to proceed by pseudonym in pre-trial public filings, despite the high burden required for such relief. But Plaintiff seeks significantly more relief in the proposed protective order. Given the seriousness of Plaintiff's allegations, including that WHRI participated in a "venture" with criminal sex traffickers, WHRI must be able to investigate and defend against these allegations. Indeed, Plaintiff acknowledges WHRI's "need to fully investigate and defend" against

Plaintiff's claims. (Dkt. 61 ("Motion") at 1). Yet Plaintiff seeks to prevent WHRI from doing so. In particular, Plaintiff's proposed protective order would, among other limitations, prohibit Defendants from (1) using her identity through "the conclusion of this matter" (i.e., trial), (2) speaking with witnesses unless they first agree to "sign[] the agreement to be bound" by the order, (3) and disclosing plaintiff's identity or likeness to her "trafficker(s)," including their "known associates," without the prior approval of Plaintiff's counsel or this Court. *See* Dkt. 61-2 (the "proposed order") at 5. These restrictions would suppress the very investigation Plaintiff acknowledges WHRI has the right to complete.

## II. BACKGROUND

Since filing her Complaint in August 2020, Plaintiff has appeared only through initials and has yet to disclose her name or any other personal identifying information. Despite initially filing a complaint in 2019, Plaintiff still has not disclosed her identity to the Defendants. Plaintiff has conditioned the disclosure of "Plaintiff's Identity"[1] on several restrictions, including the following:

1. Defendants "shall keep the true identify of Plaintiff and that of Sex Trafficking Victims confidential during and after the conclusion of this matter" (proposed order at III.B.), meaning that Plaintiff is requesting that the proposed order apply both during discovery and through trial;

---

[1] The proposed order defines "Plaintiff's Identity" as "the Plaintiff's personally identifiable information, including: (i) names and aliases used at any time; (ii) date of birth; (iii) social security number; (iv) current and prior addresses; (v) phone numbers and email addresses, and social media or online user account names; (vi) photographs and/or pictures of Plaintiff; (vii) Plaintiff's likeness; and (viii) the names of Plaintiff's biological or adoptive parents, and biological siblings and/or children." Proposed order at pg. 1.

2. Defendants shall be restricted in their use of Plaintiff's Identity, but "[n]othing herein shall restrict the use of Protected Material of the Producing Party [Plaintiff] by the Producing Party (proposed order at III.A.), meaning that Plaintiff can proceed with an investigation unencumbered by the restrictions it seeks to impose on Defendants;

3. "Any potential, anticipated or actual fact witness, with the exception of Plaintiff's traffickers (addressed below), and his or her counsel, but only to the extent that Plaintiff's true identity will assist the witness in recalling, relating, or explaining facts or in testifying after signing the agreement to be bound by this Protective Order" (proposed order at III.B.7), meaning that witnesses will be less likely to cooperate; and

4. "The Parties shall not disclose the Plaintiff's true identity and/or physical description (such as gender, ethnicity, hair color, eye color, age, height, weight, etc.) to the Plaintiff's alleged trafficker(s), whether disclosed by Plaintiff pursuant to Paragraph 6 above or discovered by Defendants by other means. Furthermore, prior to Defendant(s)' contact with Plaintiff's alleged trafficker(s), the parties must first meet and confer. If no agreement regarding the [contact] is reached, Defendant(s) may file a motion seeking an order from the Court in which it will explain the necessity of the disclosure." (proposed order at III.4.), further restricting Defendants' ability to speak with traffickers.

Plaintiff's Motion explains that this fourth restriction would apply not just to the traffickers, but also to "their colleagues, co-conspirators, or anyone else who would be reasonably likely to share Plaintiff's True Identity with her traffickers." Motion at 12.

### III. ARGUMENT

**A. Plaintiff's Request to Proceed Anonymously "During And After The Conclusion Of This Matter" Should Be Denied.**

As noted above, WHRI has not objected to Plaintiff appearing anonymously during pre-trial proceedings in this matter. However, the suggestion in the proposed order that Plaintiff may remain anonymous throughout and after this proceeding,

-3-

including at trial, goes too far. "[T]he circumstances that warrant anonymity at the outset of litigation do not necessarily apply in the same manner right before trial." *Lawson v. Rubin*, 17-cv-6404, 2019 WL 5291205, at *3 (E.D.N.Y. Oct. 18, 2019). Indeed, conducting a trial of Plaintiff anonymously "promises trouble and confusion." *Id.* (quoting *Guerrilla Girls Inc. v. Kaz*, 224 F.R.D. 571, 575 (S.D.N.Y. 2004)). As the *Lawson* court recognized, allowing plaintiffs to appear anonymously at trial runs the risk of confusion, delay, and prejudice to defendants. *Id.* (allowing plaintiffs to testify under pseudonyms runs the "'risk of giving [their] claim greater stature or dignity or otherwise confusing or distracting the jury," thus prejudicing defendants' "rights to an impartial fact-finder" (quoting *Doe v. Delta Airlines, Inc.*, 310 F.R.D. 222, 224 (S.D.N.Y. 2015))).

Plaintiff appears to acknowledge as much, suggesting in both her Motion and the proposed order that Plaintiff will proceed anonymously "until the time of trial." Motion at 8; *see also* proposed order at IV (requiring the parties to redact Plaintiff's identity from "any public filing submitted during the *pre-trial* proceedings in this litigation" (emphasis added)). But this position cannot be squared with Section III.B, which states Plaintiff's "true identity" must be kept confidential "during and after the conclusion of this matter." Plaintiff should not be permitted to testify anonymously at trial. *See Lawson*, 2019 WL 5291205, at *3. At a minimum, that determination should be made upon a more complete factual record in preparation for trial, rather than at the outset of discovery.

-4-

EAST\179727156.5

## B. Defendants Should Not Be Prohibited From Investigating And Defending Against The Claims Against Them.

Plaintiff argues that WHRI and other Defendants do not need to question Plaintiff's alleged traffickers because the "Defendants can check their internal records" to see if any of Plaintiff's traffickers or their affiliates ever stayed at the hotel at issue.[2] Motion, at 13. That argument is nonsensical. The rental of a hotel room, even by a convicted criminal, does not mean that crimes were committed at the hotel, and it certainly does not mean that the hotel owner or franchisee, let alone the franchisor, associated in fact with such individuals. As Plaintiff's motion acknowledges, WHRI's internal records will not necessarily reveal any critical facts because they are only useful "to the extent real names were used to rent [hotel] rooms." Motion at 13.

Contrary to Plaintiff's attempts to diminish the legal significance of the facts surrounding Plaintiff's alleged trafficking, WHRI needs the ability to conduct its investigation as it determines is most appropriate under the circumstances. Such an investigation may include seeking to interview the alleged traffickers and/or their so-called "associates," given their obvious connection to the facts and circumstances surrounding Plaintiff's alleged victimization and the likely absence of many other witnesses with firsthand knowledge. As a threshold matter, a plaintiff is only entitled to bring a claim under the TVPRA insofar as the plaintiff is a "victim" of trafficking

---

[2] Although WHRI opposes Plaintiff's motion individually, Plaintiff's proposed order is equally damaging to all Defendants. WHRI's position is that Plaintiff's Motion should be denied in its entirety and that any protective order ultimately entered in this matter should apply equally to all parties.

crimes. 18 U.S.C. § 1595(a). Accordingly, WHRI needs the ability to conduct discovery concerning individuals alleged to have committed, participated in, or witnessed trafficking crimes against Plaintiff (*e.g.*, Plaintiff's alleged traffickers and their so-called "associates") to determine whether, when, and where any trafficking occurred.

In addition, Plaintiff's TVPRA claim requires a showing that WHRI participated in a "venture" with her alleged traffickers. Under the TVPRA, "venture" is defined as "any group of two or more individuals associated in fact, whether or not a legal entity." 18 U.S.C. § 1591(e)(6); *Bistline v. Parker*, 918 F.3d 849, 873 (10th Cir. 2019). The Supreme Court and the Eleventh Circuit Court of Appeals have recognized that, for persons to be "associated in fact," they must operate as a "continuing unit that functions with a common purpose." *See, e.g.*, *Boyle v. United States*, 556 U.S. 938, 948 (2009); *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1211 (11th Cir. 2020). WHRI is entitled to investigate the facts surrounding Plaintiff's alleged trafficking in order to disprove Plaintiff's claim that it was "associate[d] in fact" with any trafficker. Plaintiff has no good-faith basis for arguing that the facts surrounding Plaintiff's traffickers are immaterial or inconsequential.

Plaintiff also points to statutory language that an individual may be liable for participation in a venture "which that person knew or *should have known*" violates the TVPRA. Motion at 3, 10-11. But Plaintiff has not specifically alleged what WHRI knew or how WHRI "should have known" Plaintiff was being trafficked at a franchisee's facility. WHRI is entitled to investigate the facts surrounding Plaintiff's

-6-

alleged trafficking in order to investigate and discover the basis for Plaintiff's suggestion that WHRI "should have known" about the alleged trafficking venture.

### C. WHRI Is Entitled To Conduct The Type Of Confidential, Work-Product Investigation That The Proposed Protective Order Would Prevent.

The right and need of a defendant to investigate and defend against the claims against it is central to the judicial process. To this end, the Supreme Court has recognized that it is

> essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests.

*Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947). "Witness interviews, conducted in private, are routine components of nearly every attorney's case preparation." *In re Am. Med. Sys., Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, 946 F. Supp. 2d 512, 514 (S.D.W. Va. 2013). "The *ex parte* interview is an effective discovery procedure which *operates outside of and is not precluded by the federal discovery rules*." *Sklagen v. Greater Se. Cmty. Hosp.*, 625 F. Supp. 991, 992 (D.D.C. 1984) (emphasis added). A defendant is afforded the right to inquire "by any lawful manner to learn what any witness knows" and the Federal Rules of Civil Procedure "have never been thought to preclude the use of such venerable, if informal, discovery techniques as the *ex parte* interview of a witness who is willing to speak." *Doe v. Eli Lilly & Co., Inc.*, 99 F.R.D. 126, 128 (D.D.C. 1983); *see also Patton v. Novartis Consumer Health, Inc.*, 4:02-CV-0047-DFH-WGH, 2005 WL

1799509, at *4 (S.D. Ind. July 25, 2005) ("Where an interview would not intrude on privileged communication, the court does not have the authority to prohibit one side from talking to the witness privately and informally.").

Absent an applicable privilege, courts may not prevent a party from interviewing (or limit a party's ability to interview) potential witnesses outside the presence of the adverse party as part its informal investigation. *See In re BofI Holding, Inc. Sec. Litig.*, 318 F.R.D. 129, 133 (S.D. Cal. 2016) ("[T]he Court agrees with Defendants that their informal investigations do not fall within the scope of formal discovery regulated by Rule 26."); *see also, e.g.*, *Gilliard v. McWilliams*, 315 F. Supp. 3d 402, 410 n.3 (D.D.C. 2018); *Peterson v. Outback Steakhouse, Inc.*, 15-CV-13980, 2016 WL 5235609, at *6 (E.D. Mich. Sept. 22, 2016) ("Plaintiff provides no legal basis for limiting the *ex parte* interviews . . . and her argument is inapposite to the process of informal discovery."); *Fed. Trade Comm'n v. AMG Services, Inc.*, 2:12-cv-00536-GMN-VCF, 2013 WL 12320929, at *3 (D. Nev. Aug. 20, 2013) ("If a witness is willing to speak with counsel, without compulsion, such informal interviews are permitted and not effected by any discovery limitations agreed to by the parties or ordered by the court. . . . The court [] finds that it is improper for the court to limit the FTC's, or any parties', ability to conduct informal interviews with willing witnesses to gather information, and declines to do so.").

An order that impermissibly prevents or restricts a party's right to interview fact witnesses as part of an informal investigation outside the presence of opposing counsel

is subject to being reversed or vacated. In granting a writ of mandamus that vacated such an order, the Second Circuit Court of Appeals explained:

> We believe that the restrictions on interviewing set by the trial judge exceeded his authority. . . . [C]ounsel for all parties have a right to interview an adverse party's witnesses (the witness willing) in private, without the presence or consent of opposing counsel and without a transcript being made. . . . [W]e are concerned that the means chosen by Judge Edelstein have unduly infringed upon counsels' ability to prepare their case for trial . . . . We believe that it does a disservice both to the parties and to the Court to subject to the Court's scrutiny the process by which counsel researches, develops and integrates the case which he ultimately presents. . . . The legitimate need for confidentiality in the conduct of attorneys' interviews, with the goals of maximizing unhampered access to information and insuring the presentation of the best possible case at trial, was given definitive recognition by the Supreme Court . . . .

*Int'l Bus. Machines Corp. v. Edelstein*, 526 F.2d 37, 42 (2d Cir. 1975). Similarly, in *Wharton v. Calderon*, the Ninth Circuit Court of Appeals reversed a protective order prohibiting one party from communicating with certain witnesses "except by noticed deposition." 127 F.3d 1201, 1202-03, 1207 (9th Cir. 1997).

As explained below, the proposed protective order is unworkable and unreasonably interferes with WHRI's ability to investigate its case for several reasons.

1. **The Proposed Order Unfairly Allows Plaintiff And Her Attorneys Full Use Of Plaintiff's Identity, While Denying Defendants The Same.**

Paragraph III.A of the proposed order provides that "[n]othing herein shall restrict the use of the Protected Material of the Producing Party by the Producing Party." In other words, Plaintiff's proposed order would limit WHRI's ability to investigate Plaintiff's claims by prohibiting WHRI from showing even a photograph

-9-

of Plaintiff to potential witnesses unless those witnesses agree to sign an undertaking, but it would not similarly limit Plaintiff or her counsel in conducting their own investigation. There is no reasoned justification for unilaterally restricting Defendants' investigation. Such unfair limitations are not supported by the law. *See Int'l Bus. Machines*, 526 F.2d at 42

> 2. **The Proposed Protective Order Seeks to Limit Defendants' Ability to Interview Potential Fact Witnesses.**

Before Plaintiff's identifying information (including, for example, a photograph or description of Plaintiff) may be disclosed to any witness or potential witness, the proposed protective order would require witnesses to sign an agreement to keep that Plaintiff's identity confidential going forward. Proposed order at III.B.7. Thus, if a Defendant were to seek to question an acquaintance or family member of Plaintiff, the witness would be required to execute an undertaking before the Plaintiff's identify is shared with them, despite the fact that Plaintiff's identity is already known to that person. Under the proposed order, those witnesses also would not be able to state Plaintiff's name going forward. Proposed order at III.B.7, pg. 9.

This restriction makes no sense: Plaintiff's identity is not confidential *per se*, and attempting to afford it protections as though it is a trade secret or confidential proprietary information is arbitrary, impractical, and prejudicial to the development and presentation of WHRI's defense. Further, requiring WHRI to obtain a signed confidentiality agreement before even showing potential witnesses (such as hotel employees) Plaintiff's picture will unreasonably burden WHRI's investigation and

-10-

could deter witnesses from agreeing to an interview. *See, e.g.*, *A.D. v. Wyndham Hotels & Resorts, Inc.*, 4:19-00120-AWA-LRL, 2020 WL 5269758 at *5 (E.D. Va. Mar. 20, 2020) ("[The] protective order must allow Defendant full access to Plaintiff's identity and the identity of her alleged trafficker, and for Defendant to utilize this information in discovery."); *Doe v. John F Kennedy Univ.*, C-13-01137 DMR, 2013 WL 4565061, at *4 (N.D. Cal. Aug. 27, 2013) (finding "Defendants' efforts to investigate the case would be hampered" by anonymity and "[t]hird-party discovery would be similarly awkward and difficult"); *see also Doe v. Kamehameha Sch./Bernice Pauahi Bishop Estate*, CIV. 08-00359JMSBMK, 2008 WL 4755674, at *6 (D. Haw. Oct. 28, 2008) (finding "discovery will be burdened if Plaintiffs' identities are kept secret" from witnesses), *aff'd* 596 F.3d 1036 (9th Cir. 2010).

### 3. The Proposed Protective Order Would Prevent Defendants From Interviewing the Alleged Traffickers and Their Associates.

The proposed order also would prevent WHRI from interviewing anyone with knowledge of Plaintiff's trafficking without approval from Plaintiff's counsel or this Court. Under Plaintiff's proposed order, WHRI is prohibited from disclosing any information about Plaintiff—including her gender, ethnicity, or hair color—to the alleged traffickers and cannot contact the alleged traffickers without prior approval from Plaintiff's counsel or this Court. Because the proposed order's limitations on disclosure of information to traffickers is overly broad and poorly defined, WHRI cannot comply with the proposed order and still properly investigate Plaintiff's claims.

As an initial matter, the proposed protective order's reference to Plaintiff's "traffickers" is undefined. Although Plaintiff's Motion claims she was trafficked by Gregory Hines and Keith Lewis, the proposed order does not limit the term "traffickers" to those two individuals, and Plaintiff has not affirmatively stated Hines and Lewis are the *only* alleged traffickers. Motion at 3. Indeed, at various points, the Motion references "trafficker(s)," suggesting the number of traffickers is not known. Motion at 3, 5, 8. The Motion also states that Plaintiff intends that the proposed order will prevent WHRI from contacting any alleged traffickers *and* "their colleagues, co-conspirators, or anyone else who would be reasonably likely to share Plaintiff's True Identity with her traffickers." Motion at 12. These restrictions are unworkable. Under Plaintiff's proposed order, WHRI would be prevented from communicating with individuals who may have been involved in Plaintiff's alleged trafficking without knowing who those individuals are because their names have not been disclosed. And because the term "traffickers" is undefined, WHRI cannot possibly know if a potential witness it hopes to interview is an "alleged trafficker" or a "colleague" of an alleged trafficker.

The proposed limitation on interviewing traffickers is additionally unworkable because it contains an overly broad limitation on the identifying information WHRI can disclose. As written, WHRI would be prohibited from disclosing "Plaintiff's true identity and/or physical description (such as gender, ethnicity, hair color, eye color, age, height, weight, etc.) to the Plaintiff's alleged trafficker(s)." Proposed order at III.4. Yet, one of the points of such an interview would be to explore the trafficking

EAST\179727156.5

of this Plaintiff, in particular. Coupled with the sweeping definition of "traffickers" that Plaintiff's Motion proposes, this provision will effectively prevent WHRI from interviewing any witnesses about the alleged trafficking without Plaintiff's or the Court's approval.

**D.  The Proposed Protective Order Intrudes on WHRI's Attorney Work Product.**

The proposed protective order also impermissibly seeks to force WHRI to disclose confidential information protected by the attorney work-product doctrine by requiring WHRI to meet and confer with Plaintiff's counsel before even contacting Plaintiff's alleged traffickers. Proposed order at III.4. If the parties do not reach an agreement during this meet and confer, WHRI then must "file a motion seeking an order from the Court in which it will explain the necessity of the disclosure." *Id.* That provision renders the proposed order contrary to law because one party "may not limit the access of the other party to fact witnesses." *Bryant v. Hilst*, 136 F.R.D. 487, 489 (D. Kan. 1991). Moreover, it impermissibly forces disclosure of information protected by the attorney work-product doctrine.

Attorney work product is protected from disclosure in the course of discovery. *See, e.g.*, *Castle v. Sangamo Weston, Inc.*, 744 F.2d 1464, 1467 (11th Cir. 1984). That includes not only an attorney's written work product, but also counsel's "mental impressions, conclusions, opinions, or legal theories developed in anticipation of litigation." *Hickman v. Taylor*, 329 U.S. 495, 510 (1947) ("Not even the most liberal of discovery theories can justify unwarranted inquiries into the . . . mental impressions

-13-

of an attorney."). Opinion work product "enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances." *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1422 (11th Cir.) (internal quotations omitted). As the Fourth Circuit Court of Appeals has explained:

> Courts carefully guard opinion work product from disclosure to an opposing party . . . [because] revealing an attorney's thoughts and opinions to an opposing party runs contrary to the principles underlying the adversary process…If courts failed to protect opinion work product, . . . clients and our adversary system would suffer as a result.

*In re Allen*, 106 F.3d 582, 607 (4th Cir. 1997); *see also* FED. R. CIV. P. 26(b)(3)(B) (stating that, even in rare circumstances where the production of work product is warranted, courts "must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation"). While the identities of witnesses with relevant knowledge are not protected from disclosure, "the choice by counsel of which witnesses to interview is protected by the work product doctrine." *Al-Aqrabawi v. Pierce County*, C07-5341RJB, 2008 WL 11508826, at *2 (W.D. Wash. July 7, 2008); *Ferruza v. MTI Tech.*, SACV 00-0745 DOC, 2002 WL 32344347, at *3 (C.D. Cal. June 13, 2002) (explaining "the identity of witnesses interviewed by opposing counsel is protected" because "opposing counsel can infer which witnesses counsel considers important, revealing mental impressions and trial strategy."); *see also Castle*, 744 F.2d at 1466 (explaining "there is no question" that attorney witness interview are protected work product).

Requiring a party to disclose which witnesses have been or will be interviewed, let alone what they were or will be interviewed about, amounts to forcing the

-14-

disclosure of "a roadmap" of that party's pre-trial strategy as well as the mental impressions of counsel, which "implicates core policies behind the work product doctrine." *Plumbers & Pipefitters Local Union No. 630 Pension-Annuity Tr. Fund v. Arbitron, Inc.*, 278 F.R.D. 335, 343 n.8 (S.D.N.Y. 2011); *see also, e.g.*, *Odonnell v. Harris County, Tex.*, CV H-16-1414, 2017 WL 4877454, at *1 (S.D. Tex. Jan. 11, 2017) ("[T]he defendants are not entitled to specific disclosure of the plaintiffs' interviewees . . . ."); *Mitchell Eng'g v. City & County of San Francisco*, C 08-04022 SI, 2010 WL 1853493, at *1 (N.D. Cal. May 6, 2010) ("[T]he fact that certain witnesses are interviewed and then not contacted further tends to reveal strategy."); *Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Sys., Inc.*, C01-20418JW, 2005 WL 1459555, at *4 (N.D. Cal. June 21, 2005) ("[I]f the identity of interviewed witnesses is disclosed, the opposing counsel can infer which witnesses counsel considers important, revealing mental impressions and trial strategy." (internal quotations omitted)); *Elec. Data Sys. Corp. v. Steingraber*, 4:02 CV 225, 2003 WL 21653405, at *2 (E.D. Tex. July 9, 2003) ("The Court finds that revealing the identity of witnesses interviewed would permit opposing counsel to infer which witnesses counsel considers important, thus, revealing mental impressions and trial strategy.").[3]

---

[3] *See also, e.g.*, *Laxalt v. McClatchy*, 116 F.R.D. 438, 443 (D. Nev. 1987) (reversing magistrate judge's order requiring party to disclose witnesses interviewed); *Bd. of Educ. of Evanston Twp. High Sch. Dist. No. 202, Cook County, Ill. v. Admiral Heating & Ventilating, Inc.*, 104 F.R.D. 23, 32 (N.D. Ill. 1984) ("[A] party may properly inquire into the identity and location of persons having knowledge of relevant facts. But the party may not do so in a fashion that effectively infringes upon the opposing attorney's preparation of his case for trial.").

The proposed order intrudes on WHRI's protected work product by requiring WHRI to disclose when it intends to contact the alleged traffickers or their so-called "associates."[4] Plaintiff seeks to require WHRI to meet and confer with her counsel before contacting any "alleged trafficker" or associate. Proposed order at III.4; Motion at 8, 13. And if Plaintiff's counsel does not consent to WHRI's interview, under Plaintiff's proposal, WHRI then must appeal to this Court and "explain the necessity" of its interview before it can even contact an alleged trafficker. Proposed order at III.4. This procedure eviscerates WHRI's work product protections and is contrary to law. *See E.S. v. Best Western Int'l, Inc.*, 3:20-cv-00050-M, 2020 WL 8639347, at *1-2 (N.D. Tex. July 14, 2020) (retracting requirement that defendants provide plaintiff's counsel advance notice prior to disclosing the plaintiff's identity in the course of discovery).

## IV.  CONCLUSION

WHRI will consent to Plaintiff's request for leave to proceed under a pseudonym in pre-trial public filings, without prejudice to any party's request to revisit the issue upon a showing of good cause. Given the seriousness of the allegations against it and the very limited information provided, WHRI cannot agree to the severe

---

[4] As explained above, WHRI may want to interview Plaintiff's alleged traffickers and their so-called "associates" because Plaintiff's claim is premised on the allegation that WHRI participated in a "venture" with the alleged trafficker(s). That "at least" requires proof of an express or "tacit agreement" between the hotel and the alleged traffickers. *See H.H. v. G6 Hosp., LLC*, 2:19-CV-755, 2019 WL 6682152, at *4 (S.D. Ohio Dec. 6, 2019) ("In the absence of a direct association, Plaintiff must allege at least a showing of a continuous business relationship between the trafficker and the hotels such that it would appear that the trafficker and the hotels have established . . . a tacit agreement.").

-16-

limitations on its right to investigate and defend against these claims. WHRI respectfully requests that Plaintiff's motion for a protective order be denied.

Dated this 10th day of March, 2021.

                                           s/ J. Trumon Phillips
                                           J. Trumon Phillips
                                           Florida Bar No. 84568
                                           **DLA PIPER LLP (US)**
                                           3111 W. Dr. Martin Luther King Jr. Blvd.
                                           Suite 300
                                           Tampa, Florida 33607-6233
                                           Phone: 813-229-2111
                                           Fax: 813-229-1447
                                           Email:trumon.phillips@dlapiper.com
                                                       sheila.hall@dlapiper.com

                                           David Sager (admitted *pro hac vice*)
                                           **DLA PIPER LLP (US)**
                                           51 John F. Kennedy Parkway, Suite 120
                                           Short Hills, NJ 07078-2704
                                           Phone: 973-520-2550
                                           Fax: 973-520-2551
                                           Email:david.sager@dlapiper.com

                                           Lianna Bash (admitted *pro hac vice)*
                                           **DLA PIPER LLP (US)**
                                           701 Fifth Avenue, Suite 6900
                                           Seattle, WA 98104-7029
                                           Phone: 206-839-4800
                                           Fax: 206-839-4801
                                           Email:lianna.bash@dlapiper.com

                                           *Attorneys for Defendant*
                                           *Wyndham Hotels & Resorts, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on March 10, 2021, a true and correct copy of the foregoing was furnished by CM/ECF to all counsel of record as listed below.

                                               s/ J. Trumon Phillips
                                               Attorney

## SERVICE LIST

Sharon M. Hanlon
Law Office of Sharon M. Hanlon, PA
5633 Naples Boulevard
Naples, FL 34109
Phone: 239-598-3222
Fax: 239-598-9002
Email:shanlon@zelmanandhanlon.com
      gcohen@zelmanandhanlon.com
-and-
Yale T. Freeman
Yale T. Freeman, PA
7257 NW 4th Boulevard, Suite 82
Gainesville, FL 32607
Phone: 239-530-2500
Fax: 239-530-4400
Email:ytfreeman@ytfreemanlaw.com
-and-

Randolph Janis (admitted *pro hac vice*)
Michael A. London (admitted *pro hac vice*)
Diana Yastrovskaya (admitted *pro hac vice*)
Virginia E. Anello (admitted *pro hac vice*)
Douglas & London, P.C.
59 Maiden Lane, 6th Floor
New York, NY  10038
Phone:  212-566-7500
Fax:  212-566-7501
Email: rjanis@douglasandlondon.com
　　　mlondon@douglasandlondon.com
　　　dyastrovskaya@douglasandlondon.com
　　　vanello@douglasandlondon.com
*Attorneys for Plaintiff*

Kenneth M. Oliver
Levi D. Thomas
**KUBICKI DRAPER**
13350 Metro Parkway, Suite 401
Fort Myers, FL  33966
Phone:  239-334-8403 (Oliver direct dial)
Email: KO-KD@kubickidraper.com
　　　ko@kubickidraper.com
*Attorneys for Defendant*
*Hanuman of Naples LLC*

Daniel J. Santaniello
**LUKS, SANTANIELLO, PETRILLO & COHEN**
150 W. Flagler Street, Suite 2600
Miami, FL  33130
Phone:  305-377-8900
Fax:  305-377-8901
Email: LUKSMIA-Pleadings@LS-Law.com
　　　djs@ls-law.com
　　　djs@insurancedefense.net
　　　kdivico@insurancedefense.net
　　　sferguson@insurancedefense.net
　　　ejimenez@insurancedefense.net
　　　jfelser@insurancedefense.net
　　　jfigueroa@insurancedefense.net
*Attorneys for Defendant*
*H.I. Naples, LLC*